Good morning, Your Honors. May it please the Court, Thomas Hudson on behalf of the appellant Dr. Lagstein. I do hope to save at least five minutes for rebuttal, and unless the Court prefers that I proceed differently, there are a large number of issues in the case. I plan to begin by discussing the interest issue, then turn to the attorney's fee issue. I plan to leave the cross appeal to the briefs unless the Court has questions on that issue. With respect to interest, for over 50 years, the law in the Ninth Circuit has been that when entering a judgment on an arbitration award, the judgment should include whatever interest the law entitles the party to, whether it be post-judgment or pre-judgment interest. Every other circuit to have considered that issue has come down with that same rule, as has the majority of states that have either substantially similar and in some cases virtually identical arbitration acts to the Federal Arbitration Act. And most recently, in the cubic defense case, this Court made absolutely clear that including interest in a judgment confirming an arbitration award does not involve any modification of the award whatsoever. And fundamentally, we would submit that the difference between the award itself and the judgment, just as including interest in a judgment on jury verdict doesn't modify the jury verdict, including interest on a judgment that confirms an arbitration award doesn't modify the arbitration award. So recognizing this, Lloyds has now made a new argument on appeal. On appeal, Lloyds has now contended that the mandate, Rule 37, precluded the district court from including any interest on the judgment. But the prior panel's order was not the mandate was not a directive to enter a particular money judgment. And we know that for several reasons. One, there was a stipulation, of course, to state a mandate pending the cert petition. And in that, in those papers, it was made clear that there would be further proceedings with respect to interest and attorneys' fees. And indeed, the Ninth Circuit itself ultimately transferred the issue of attorneys' fees to the district court. So it was not contemplating that there would be a particular specific money judgment entered. Rather, it said that the district court should confirm the awards. And I would note that in the AT&T case, in the conclusion, the court says the awards stand confirmed. The awards are confirmed, and then left the issue of interest to be decided about how much to be included in the judgment. So the mandate issue, we likewise submit, goes nowhere. So that, then, brings us to the issue of Nevada law. If Lagstein's entitled to interest under Nevada law, that interest should have been There are two reasons that make it crystal clear there is such entitlement. First and foremost is the language of the Nevada statutes. Tellingly, Lloyds has never, never contended that under the plain language of the statutes, Dr. Lagstein was entitled to interest. Instead, we've sort of disagreed about how to construe this Nevada Supreme Court case, the Mausbach case. And we would submit that there's two reasons that it makes clear that, in fact, it is appropriate to award post-judgment and post-award pre-judgment interest when confirming the award. First, we know that under Nevada law, the Supreme Court has made clear that really you shouldn't view its statutes as either being pre-judgment or post-judgment. They just provide that interest starts at a date and it ends on a date, and whatever that is, it gets Second, we know that the Mausbach Supreme Court said that when confirming an award, a court should include interest commencing from the date of the award under the Nevada statutes. So again, we submit that Nevada law is quite clear. Kennedy. Did Mrs. Mausbach get any interest on her $10,000 from the date of the entry of the award until the entry of judgment? That wasn't the – it ultimately didn't become an issue in that case because the award was paid. I mean, the question, did she get any interest at all? None was due. She didn't. In other words, what you're saying is that on the day the award was entered from Mrs. Mausbach, it was paid. Correct. And how do you get to that decision? It's in the facts of the case. No. It says it was paid shortly or briefly after. Fair enough, yes. It wasn't paid on the day. So in other words, there was some, at least a small amount of evidence, I mean, a small amount of interest due from entry of the award to its payment. Is there any indication that that interest was paid? No. Not one way or the other, except I would suggest, Judge Beyer, that the Supreme Court said that the district court – I don't know what happened on Remand in that So I think it's a fair assumption to conclude that to the extent any interest was owed, it would have been paid. Mausbach's confirmation proceedings were initiated only for the purpose of obtaining prejudgment interest from the date the lawsuit was filed. She lost that. Correct. Did not get that. Correct. Now, how do you take from that that she did get interest or she should have gotten interest on the date of the award, not the date of the judgment? I'm relying completely on the sentence where the Nevada Supreme Court is citing creative builders and says that the district court – nothing we can – it's really not an issue in that case, but what they're saying is nothing in this opinion precludes the district court from awarding interest commencing from the date of the  judgment. And I guess on this case, too, I think this is a significant point. Mausbach was adopting aligning itself with creative builders' decision out of Arizona, and creative builders was more precise in its language and made absolutely clear, drew this distinction between pre-award and post-award interest, and said that post-award interest should be included in the judgment. And again, Lloyds has never – never even addressed the creative builders' case, yet that's exactly what the Nevada Supreme Court was aligning itself with, and it's a much clearer decision. So unless there's further questions on the entitlement to interest, let me turn to how it gets calculated, the rate and the components. With respect – with respect to the rate of interest, Lloyds should not benefit from the delay it caused. And really the only question is the time that you look at for calculating the interest. And what the Nevada statutes say is you should – ultimately they come down to using a time close in time to the award, and we would submit that there's two possibilities, either the award itself or the time when the first judgment should have been – when the judgment should have been confirmed, the arbitration award should have been confirmed in 2007. In both instances, that's the 10.25 percent rate. And again, all of this – everything this Court's ever said on how to calculate interest weighs in favor of not awarding Lloyds for the delay it caused. With respect to the components, there's absolutely no basis for singling out any individual component of the award. Lloyds has cited no authority in any case confirming an arbitration award where court has said we're going to award interest on one component and not another. And indeed, that would be contrary to this – this Court's decision in the error separation case where it rejected doing that same thing in the case of post-judgment interest. Are you talking about any point in time? I mean, there is Nevada law saying that you don't, with regard to the prejudgment or perhaps pre-award period, that you don't get interest on punitive damages. And we're not contesting that. What point in time are we talking about now? I'm talking about – okay. And let's be clear. When we're talking about it, there's two issues, calculating the rate and then what components – what components of the award get accrued interest. And I take it your question is about the rate? Well, you made a statement that sounded to me broader. My statement was not so much about the rate as the component parts. You indicated there's no authority that distinguishes amongst component parts. In fact, there is at an earlier point in time. So I want to be clear at what point in time you're talking about. Okay. What I'm talking about is once the award is issued, it's from that point in time that whatever interest is due has to be due on the entire award. And the reason I say that, again, is really we've not seen any case that sort of breaks down the components of award. It's really sort of, again, treated like a jury verdict where it's awarded on the entire amount. And we did cite cases. This argument has been made in other cases. The Abasco case that we cite in our brief is one example of this where a party was trying to single out attorney's fees, and it was rejected precisely for the reasons I mentioned, that you – it's the award is the award, and if you're due interest on the award, you get it on every component. So unless there are – Punitive damages. Including punitive damages. Yes, absolutely. Again, you know, I understand, we understand that Nevada law says you don't get it pre-judgment. There's no case that it has addressed pre-award versus post-award. Our position is you get a post-award, and two fundamental reasons. When you look at the entire rationale that the Nevada Supreme Court has given, the Nevada courts have given, it's very much in line with what this Court has said about how we calculate interest, that once we know the amount, the interest is due. And again, to not include that would incentivize or create – it would reward Lloyds for the delay. And again, once you have an arbitration award, no case – we've seen no case that says if interest is due, you get a – you know, pick and choose what gets included in that. And the cases we've cited have rejected that argument. Unless there's further questions on – I'm not sure where this stands in your outline, but at some point we have the question, and you won't be surprised to learn that there are a lot of moving parts here, and I was having trouble trying to assemble them. We have different interest rates for a State and a Federal judgment. And at some point in time, you're dealing with a judgment to be issued by a Federal court, and I think you included arguments saying it should relate back to a different point in time. What is it you're understanding as to when the interest rate changes from the State interest rate to the Federal judgment interest rate? When do you think the Federal judgment should be treated as being effective? Okay. Let me answer that in two ways, if I may, Judge Clifton. One, the position, the primary position we have taken is that in this case, that the interest under the Nevada statutes should run on the full award until the awards were confirmed on the remand following the last appeal. And that's when, in fact, a judgment, the first time a money judgment was ever entered in this case. So at that point, we should relate back, if we make any changes, you argue that the changes should relate back to the date of the first Federal court judgment? The first Federal court money judgment. Money judgment. Which was what, 2010? It was after that. It was 2000. I should have that date. I'll get that. Give me the docket number and the date, would you please? Yes, please. You can stop the clock for a second, Mr. Levy. It's docket 177, and the date is 9-23-2011. So it's that date, Judge Clifton, getting back to your question, that we contend interest under the Nevada statutes should run, and then after that date, it would be post-judgment interest, but Lloyd's paid the award as of that date. So if there's not further questions on the interest, let me just briefly turn to the fees issue. We would submit that cubic defense likewise resolves the fee issue. It rejects the argument that entering fees on a judgment constitutes a modification of the arbitration award. And fundamentally, big picture, I think, some of the cases, the Mankey case, for example, is really sort of getting confused about how the FAA relates to the law generally. And this is a big picture point that sometimes when you're preparing for argument, here's the point. The FAA says a judge, a court has to confirm award, a vacated award if certain things are, certain criteria are met. It says nothing about sort of the generally applicable, otherwise applicable provisions, rules of civil procedure, other things that come into play when a party goes to federal court to confirm an arbitration award. And we know when Lloyd says, well, any dispute has to be submitted to arbitration, that literally cannot be true. For example, in this case, an issue of sanctions came up. The district court wanted to sanction Lloyd's. If any dispute had to go to arbitration, we could say timeout, let's go back to the arbitrators and see whether that conduct is sanctionable. And, of course, we know the process itself of getting the award confirmed is a process that happens in federal court. And so I think the better way to construe the FAA is to say, look, Congress enacted it with the understanding that there exists a body of rules of civil procedure and otherwise applicable principles that when you go to enter, finally enter a judgment, and the FAA says nothing about judgments, it says confirm, that those rules are going to apply just as any other case. We have the rules of civil procedure that talk about attorney's fees and judgments and we have the statute that talks about judgments. And cubic defense, I think, got it exactly right. Collateral issues like those, the law governing them remains the same. And just as in any other diversity action, fees and interest would be awarded to a party, it should be in an FAA action as well. One question takes you back to interest. We're looking at this Nevada Supreme Court's decision in Mossbach. There are certainly arguments for interpretation, but suppose we decide we're just not clear. Is that an issue that should be certified to the Nevada Supreme Court? Perhaps. I mean, it is an issue that the Nevada Supreme Court would side. I think we would submit that it's – I guess we have a pretty high degree of confidence about how the Nevada Supreme Court would resolve that issue, particularly because it relies on creative builders. It's aligning itself with creative builders. And I think it would be odd. There's no reason to think the Nevada Supreme Court would deviate from all of the cases in the other States, the majority, thinking, particularly given the rationale, that it's used in other interest contexts. So certainly that's something this Court may do if it has, if it thinks it's a close question or has some concerns. We don't – I see there's arguments on both sides. I think when you read this opinion carefully, it's not a close question, particularly in light of creative builders. If there's no further questions, I'll save the remaining time for rebuttal. Thank you. And we'll hear from the underwriters. Thank you, Your Honor. May I ask at the outset whether it's appropriate for a cross-appellant to reserve time for rebuttal?     I think that's a good question. Well, we didn't hear much argument about the cross-appeal. So if there's – I presume if there is argument on rebuttal about the cross-appeal, there would be. But if there's not, there wouldn't be anything to rebut. Well, both the mandate issue and the entitlement to pre-judgment interest apply to both the main appeal and the cross-appeal. Well, you should take them up as part of the main appeal then. I mean, usually we don't go back a fourth time. So unless there's something unique that comes up, I'd suggest you ought to speak to it now. I'll do the best I can, Your Honor. Let me start with the mandate issue because that really resolves half the case outright. As the Court knows, the mandate in Ladstein 1 says remanded for confirmation of all the awards and says nothing about pre-judgment interest or any interest whatsoever. Now, Rule 37B, Riggs and Newhouse, which is a case we submitted to the Court a couple of weeks ago, make it clear that if there are no instructions in the mandate about pre-judgment interest, the district court is powerless to award it. And Planned Parenthood makes it clear that Ladstein needed to expeditiously move to recall the mandate, by which it means as soon as he realized that the mandate lacked instructions on interest, if he wanted to pursue the issue further. Now, he didn't do that. He instead went to district court, which correctly ruled that under Planned Parenthood, it could do nothing more than award post-judgment interest from the date of the judgment on remand. And he keeps saying it's something we're newly raising, but we raised it in the district court and the district court actually addressed it at page 6 of its order, which is ECF 174. Not that it really matters, but so it seems to me there's a crystal clear rule here that ties the hands of the court. He would the mandate doesn't include it. He didn't seek to recall the mandate. And so there's nothing more that the district court could have done. So let me turn to some of the arguments that he's made to try to escape the impact of Rule 37B. First, he says that Rule 37B doesn't apply to prejudgment interest. But Newhouse and Briggs itself dispensed with that argument. Both cases involved prejudgment interest. Second, he says that Rule 37, this is in response to our 28J letter. He says that Rule 37B applies only when the first appeal is from a money judgment. And that's based on a misreading of the rule. The rule says if the court modifies or reverses a judgment with a direction that a money judgment be entered, the mandate must contain instructions about the allowance of interest. That's exactly what happened here. There was a judgment vacating the awards, the arbitral awards. That's the first part of the sentence, satisfied. And then the second part was satisfied when the Lackstein 1 panel remanded for confirmation of the awards. And I'd also mention that Briggs arose in exactly the same posture, except there was a verdict instead of an arbitral award. And there the verdict was vacated by the district court on a motion for judgment, notwithstanding the verdict, which is what it was way back then. So that won't get him out from under the mandate either. He next says that the mandate rule doesn't apply because prejudgment interest wasn't at issue in the first appeal. But the short answer to that is that it doesn't matter under Rule 37 whether it was or wasn't. Rule 37, Briggs, Newhouse, and Planned Parenthood all establish a clear line. And it doesn't ask was this briefed, was it discussed, how much was it discussed. But in any event, it was at issue. He asked for a prejudgment interest at the end of his opening brief, and he raised it again in his request for instructions. It was a document, which is in the second volume of the ER, of the excerpts of record, that basically requested that the court lift the stay, issue the mandate, and give instructions. But then he tried to sort of have it both ways and said, if you don't want to give instructions, that's okay too, I'll just win in the district court. But he guessed wrong about that. I don't think he realized that Newhouse was out there, and he didn't realize the impact of Briggs itself because both of them, he thought it didn't apply to prejudgment interest. And he said it in his, in that document. Next, he says that the order denying his motion to issue the mandate and his request for instructions as moot proves that the panel, the first panel, intended the district court to consider prejudgment interest in the first instance. The short answer to that, Your Honor, is that the court dismissed it as moot because it was moot. The mandate had already issued, and he had not expeditiously sought to recall it. Over two weeks passed after the issuance of the mandate, he had done nothing, so the court naturally denied that motion as moot. In any event, again, the panel's intent didn't matter. Under the rule, under Rule 37, Briggs, Newhouse, and Planned Parenthood, if it wasn't in the mandate, it wasn't in the mandate, and it wasn't in the mandate. So the outcome is clear. He can't have any more interest. Finally, I think realizing that, he says in his brief, well, you can always recall the mandate. And the answer to that is that Planned Parenthood says this is a caution to the bar. This is a ticket for one ride only. This is the last time we are going to recall a mandate to bail out a party. In the future, if interest is not addressed in the mandate, you must expeditiously move to recall the mandate, which he didn't do. He was well aware of Planned Parenthood. He discussed it at length in that motion to give instructions. So there would be no injustice here, and it would actually violate the admonition in Planned Parenthood to, if he were allowed at this point to get a second bite through a recall of the mandate. He made a strategic gamble. He guessed wrong, and he shouldn't be bailed out now. Kennedy. I'm reading Newhouse. And Judge Reinhart wrote to the Court and reversed the award of prejudgment interest. But there's no mention of 37B. Well, he cites directly to Briggs. And Rules 37 doesn't overrule Briggs. It's supposed to be a reminder of Briggs according to the notes. So I think that, you know, the rule and Briggs are aligned, and the fact it doesn't cite the rule I don't think makes any difference. And why can't he move to recall the mandate now? He can move, but it's too under Planned Parenthood. I mean, if you go back and read that, the Court couldn't have been clearer. They were giving an admonition. They were saying, look, there has to be an end to litigation at some point. We'll do it this one time. But in the future, if it's not in there, you have to move expeditiously. And in the paragraph that precedes that paragraph, they define what they meant. They say, as soon as you realize the mandate doesn't include instructions. Well, he knew it because he was talking about Planned Parenthood in the motion. So it would be, I think, it would be undermining what the Court had in mind in Planned Parenthood to let him out from under his own strategic decision at this point. Now, if I may turn to the merits of that issue, although I don't think you should need to reach it, it boils down to the division of authority between the Court and the arbitrator. Numerous courts, as we pointed out in our briefs and in the 28 J letters, have recognized that when an arbitration provision broadly covers all disputes, as this one does, and if I may, I'll just read you the critical language, notwithstanding any other items set forth herein, the parties hereby agree that any dispute which arises shall be settled by new arbitration. When a clause is that broad, all substantive issues are for the arbitrator to resolve, and that includes prejudgment interest and attorneys' fees, both of which, in fact, the arbitrators heard extensive argument about and they actually resolved. Now, he'll say they didn't resolve it on a going-forward basis, but it could have been. It was before them. We argued about prejudgment interest on the punitive damages. So it was something that was clearly submitted to them, which is not the case in a lot of the cases they cite in their brief. And the Supreme Court, he talks about it being 50 years of precedent. The truth of the matter is the 50 years of precedent is this ever-increasing clarity in the Supreme Court that arbitration clauses have to be enforced as written, and that the FAA has written. Scalia. Why didn't you pay it on the date of the award? Why didn't you pay everything? Well, we had, as you know from the first opinion, we had serious concerns both about Did you pay it on the date? No. You didn't? No. So therefore, it's a matter for the arbitrators as far as he's concerned, but as far as you're concerned, you can do whatever you want. No, Your Honor. As we've pointed out in both cases. You mean to say that he doesn't have any remedy for your delay? I don't. Let me tell you what should have happened. First of all, he could have asked the arbitrators to give forward-looking relief with respect to prejudgment interest and attorney's fees. We had already, by the time of the second hearing, we had already filed our first motion to vacate because the 90 days on the first award had elapsed. So he knew there was going to be these proceedings. He could have asked them then. In addition, as we pointed out in our brief, the Eastern Seaboard case and other cases recognized that he could have gone back and said, clarify, did you mean this interest to run until paid or not? Did you mean these attorney's fees to continue? He didn't do that. He just took his award and decided I'm just going to, you know, oppose the motion to vacate and get my award confirmed. But he had a remedy. And as we pointed out in both the briefs and the 28J letters, there are tons of examples of courts that are doing, of arbitrators, rather, that are doing exactly this. It is common practice to say if this isn't paid, the interest is going to run until the date it's paid. So he had a remedy. He just didn't take advantage of it. The thing is, the best thing about arbitration is none of those other cases are binding on the arbitrators. Another arbitrator's award is not binding on them. Of course not, but it is a practice. So therefore, it's not really, you know, anything of great importance. I think you missed my point, Your Honor. It is a common practice known to arbitrators and parties that they can include in their award a provision that the prejudgment interest will run until paid. There are dozens and dozens of cases that refer to that practice. So it is not the case that he had no remedy. He did have one. And the same goes for attorney's fees. As we pointed out in our 28J letter that I saw. It's not usual in attorney's fees awards, when entered by a judge, to say the prevailing party gets attorney's fees and attorney's fees on appeal and attorney's fees on petition for certiorari and attorney's fees in the Supreme Court. It just says attorney's fees. That's because there's not this issue of the allocation of responsibility between court and arbitrator. The responsibility was given to the arbitrator to handle attorney's fees in the clause. So here's we pointed out in the 28J letter that we're not going to be able to do that  Kennedy, is there a reason for us to think the arbitrators decided affirmatively that fees should not be awarded for subsequent activity? What is the reason? Is that the question? Is there a reason to think the arbitrators decided no fees in the future? There's no way to know one way or the other, but we don't need to read their mind. Well, in a sense, we do, because you're saying, well, that's left to the arbitrators. Well, if the arbitrators decided it, I understand we should respect it. If the arbitrators didn't decide it, I'm not sure what's to be gained by respecting a decision they didn't make. The decision is the party's in allocating. No, no, see, you're playing a game of gotcha here. I'm asking did the arbitrators make a decision.  The fact that they could have asked the arbitrators to decide it, a question that's going to happen in the future, maybe they could have. But if the arbitrators didn't decide that issue, why do we bow down and assume that they did? There are two things. They awarded a sum certain, 350,000, and they awarded a massive amount of punitive damages, which is a windfall, as you know, for a plaintiff. It's supposed to punish a defendant, but as a windfall, it means that he's being overcompensated. So that more than suffices to cover both future attorneys' fees and future plaintiffs' fees. Is there any reason to think the arbitrators decided we've given this huge windfall, so we're not going to charge any interest or award any attorneys' fees, even if it takes 20 years for this thing to be paid and to be fought over? No. There's no way to know what they were thinking. They said we should. Is there any reason to think we should think they were thinking that way? Because if we're not, then I have a hard time understanding what decision I'm supposed to respect. The decision you're supposed to respect is the party's agreement allocates authority for all substantive issues to the arbitrators. The FAA says you have to honor that. State law cannot come in and displace that allocation of authority. It's preempted if it does. And that goes for both the prejudgment and the other. Can they go back to the arbitrators now and ask, well, okay, you guys are supposed to award us interest and attorneys' fees? No. But let me – I'd like to make two options that were available. One, in the Tri-Current Energy case that we submitted on Sunday that was just decided by the Fifth Circuit, the arbitrators provided for attorneys' fees for different contingencies in the future if there was a motion to vacate. And so that was one option. A second option, which they could have taken but they didn't, or which the arbitrators could have taken, is to say, okay, we know this is an issue for us, but it's awful hard for us to know what's going to happen in the future. Will you allocate – will you reallocate that to the court? The parties can enter into a separate agreement subsequent to say issues relating to attorneys' fees in the future will go back to the court. They can do that, and that would constitute honoring their agreement. But neither thing was done here. But my point is simply that there was not a lack of options here. They could have done either of those things. And the central issue is that the FAA doesn't allow courts to come in later and say, well, we don't think the arbitrators addressed this, therefore, we can step in and do it ourselves. What's your best case for that proposition? I think our best case, well, there's Concepcion and all of the cases leading up to Concepcion that say that you have to enforce the arbitration agreement that's written. This arbitration agreement says all issues. Some of the cases we cited in the 20-HCA letter, I think you can see. I remember Concepcion, because I wrote it. Yes, I'm aware. And I don't remember any issue in that case dealing with future interest in our future attorneys' cases. No, of course not. So why don't you give me something that is factually analogous to this case? Well, we cited a couple of this. It establishes the law that you are advocating.  And I think the reason I'm saying this is because Concepcion and Concepcion did a 20-HCA letter a couple of weeks ago. Are we bound by district court cases? No, no, but I think their reasoning is sound. They both say that when an agreement provides for all disputes to be resolved by the arbitrators, and the arbitrators actually address part of those disputes, as they did here by giving attorneys' fees and pre-judgment interest, the courts can't come in later and supplement that, which is exactly what they're asking for you to do here. That may be your May 3rd letter, Hannibal Pictures from the Central District and Own Capital from the Eastern District of Michigan. Yes, that's correct, Your Honor. I appreciate you helping me out there. Well, we're working you over pretty good, so any help we can provide. Thank you. Let me just briefly take on Kubik. That case, as you know, involved the New York Convention, and the Court was clear both that it was focused on that and limited to that, and also that because the case arose under federal questioning jurisdiction, it was applying federal common law to fill gaps, and that just doesn't apply when it's an FAA case in diversity. What they're trying to do is fill the gaps with state law that effectively is displacing the allocation of responsibility between the parties, between the court and the arbitrator. I'm sort of beating that horse again here, but the FAA says courts can't do that. I don't know if the Court wants to hear more about the issue of the rates, which I certainly hope you won't get to. Let me pose one question or two questions following up on questions that came up earlier. One is a certification question. If we're unclear on, if we decide that Nevada law kicks in and we're unclear on what it, what MOSPAC provides, is that an issue that should be certified to the Nevada Supreme Court? Well, to repeat what I said, I think no matter what they would say, if they said what Lackstein wants them to say, it would be preempted. Right. So I think, you know, we want you to hold there's no point because it would be preempted. I preface it with if. If we decide that the Nevada law kicks in. Then, I mean, we think that they used certain words. The words have meaning. Other cases used similar words. I mean, it does give me a chance to sort of switch over to the issue of the punitive damages interest. Their key case is the Powers case, which is the one that said there can be post-judgment interest. And it says, Powers punitive damages award should have accrued post-judgment interest as of the date the judgment was entered. It didn't say as of the date of the verdict. So they know what these words mean when they use them. But that wasn't an award of arbitration, was it? No. It was a jury verdict. But there was, of course, there's always, you know, there's always a different, some amount of time between verdict and judgment. And certainly, if they intended it to be verdict, they would have said verdict. They wouldn't have said judgment. So, you know. Did they say judgment on appeal? Or did they say judgment of the trial court? I. Judgment of the trial court. I believe they. So the fact that there's still a fight to be had doesn't mean that just because it's a punitive damage award, nothing runs. Right. In this case, wouldn't the closest analogy be, okay, there's an award. There's a fight to be had. It's not going to be a big fight given the discretionary deferential nature of review of arbitration awards. I'm not sure how that really answers the question. The verdict analogy doesn't sound to me like a particularly close one. Well, I think a judgment has meaning in Nevada. If you look at the statute that they want to rely on. Let's see if I can pull it up here. It's an appendix to the opening brief. And it's section 17.130. And it says, in all judgments and decrees rendered by any court of justice. Those terms, I think, require that there be both an actual judgment, not a verdict or an award, and a court entering it, rendering it. It can't be. There's nothing in there that would cause you to conclude that they were talking about an award as opposed to, or a verdict, as opposed to what we all know. And in Federal court, it's crystal clear what we know. We know what a judgment is in Federal court. So I don't think there's any reason to construe Nevada law to sort of be meaningfully different from Federal law as to what a judgment means. Is there any provision in Nevada law for payment of pre-judgment interest in tort cases? Well. Under any circumstance? I know there is in California, but. Well, what they received their interest on was the, under the Unfair Claims Practices Act, which also is in the appendix. Bless you, Your Honor. It's section 689A-.410. That allows them to get interest on the unpaid benefits, but it's by virtue of proving a statutory tort. For other torts, I'm afraid I don't know the answer, Your Honor, for pre-judgment. My suspicion is no, but I just don't know the answer. Okay. Is there any further questions? Apparently not. Thank you for the argument. Thank you, Your Honor. Mr. Hudson. Mr. Hudson, based on the counsel's last citation, the .410, is it your position that there was a determination that this contract with Dr. Langstein was a health insurance contract?    It was a health insurance contract. It was pre-entry, entry of judgment, post-award interest? Yes. And on that component, it was pre-award interest that continued to accrue until it was paid. Why do you say it was a health insurance contract? It seemed to me to be a disability contract. Your Honor, if I may, you know, that issue was resolved by the arbitration panel and is never ---- Did the arbitration panel have the authority to interpret State law? The arbitration panel had the authority to interpret the law. Why do you say that? That's what the ---- I guess I would point to the Hall Street case and ---- There wasn't any particular language in the arbitration agreement which gave the arbitrators the ability to interpret Nevada State law, correct? Well, it did give them ---- it didn't carve out. It was a general arbitration provision that allowed them to resolve all disputes. And that challenge to their ---- there was no suggestion that they didn't have the authority to do that during the arbitration or on the last appeal, which confirmed that award. And so we would submit that there's an issue of law in the case and that that issue is now final. So if I may, let me just briefly touch on the mandate issue. You know, essentially, as Judge Duffy noted, the argument that we heard primarily is that Mr. Taggart's client can sort of go scot-free because I screwed up. I hope that's not how the case gets resolved, but it shouldn't because the last mandate was not a directive to enter a particular judgment. The fee issue was transferred. The language of Rule 37 in the common, it's actually in the common in the 1967 adoption, says it only applies to a party who conceives himself entitled to interest from a date other than the date of entry of judgment, which is the Planned Parenthood rule. Not before. So, and particularly in light of the request that we made in the last panel there to dismissal, this Court absolutely has the power to recall the mandate. If I need to make a motion, consider me making one now to do that. But we think it's a non-issue. We would submit that with respect to the rest of the issues on entitlement to both interest and fees, the cubic defense case resolves those issues. The only distinction we've heard is that that case said Federal law applied because it's a Federal question, but the analysis was this. What law applies, in that case Federal, if Federal law permits interest and fees, a court can include that in the judgment. Here the question is what law applies, State law, and the analysis is if the law permits it, it gets included in the judgment. There's no meaningful distinction. I mean, really it's just what law applies and cubic defense teaches that if the law permits it, it should be included in the judgment. So then we have the issue of punitive damages. Again, there's no case that we're aware of that's carved out any individual component of an arbitration award. The cases that have considered that issue have rejected it. And then with respect to interest on tort damages, Judge Bea, the only exception that we're aware of on sort of interest accruing under Nevada law is it does carve out if there's an award for future damages, but that's not the case here. So again, we would ask, if there was an award for, you know, future damages, sort of future lost wages, for example, that would be an example of future damages. There was nothing like that in this case. So we would ask the Court to reverse and remand for an award of interest in fees unless the Court has further questions. Thank you. Thank you. Thank you, counsel, for your arguments that are helpful in a most complicated case. That concludes today's argument calendar. We're adjourned.
judges: Duffy, Clifton, Bea